# Exhibit B

FCDSWEYC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                        15 CR 611 (AJN)

BENJAMIN WEY,

           Defendant.
------------------------------x

                                  New York, N.Y.
                                  December 14, 2015
                                  10:00 a.m.

Before:

                 HON. ALISON J. NATHAN,

                             District Judge

                      APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
SARAH E. McCALLUM
MICHAEL FERRARA
IAN MCGINLEY
     Assistant United States Attorney

HAYNES and BOONE, LLP
     Attorneys for Defendant
BY:  DAVID M. SIEGAL
     JOSEPH LAWLOR

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1                (Case called)
2                MS. MCCALLUM:  Good morning, your Honor.  Sara
3     McCallum, Michael Ferrara, and Ian McGinley for the government.
4                THE COURT:  Good morning to the three of you.
5                MR. SIEGAL:  Good morning, your Honor.  David Siegal
6     and Joseph Lawlor, Haynes and Boone, for the defendant,
7     Benjamin Wey, sitting here in the middle of us.
8                THE COURT:  Good morning, Mr. Siegal, Mr. Lawlor, and
9     Mr. Wey.
10               We are here for a status and scheduling conference in
11    this matter.  At the request of the parties, we took the month,
12    in light of the volume of discovery material, to assess an
13    appropriate schedule for motions and trial, and I am happy to
14    hear the request.  I assume there has been conferral as to an
15    appropriate schedule.
16               Why don't we just begin, Ms. McCallum, with just a
17    confirmation of where we are in terms of production of the
18    discovery, including brief description of the quantity and
19    quality, and then we will turn to the joint proposal, if there
20    is one, for the schedule going forward.
21               MS. MCCALLUM:  Certainly, your Honor.
22               As the court is aware, the discovery in this case has
23    been very, very voluminous.  At this point, discovery has been
24    completed with the one exception, which isn't really an
25    exception, but we are providing a subset of some of the

1  electronic search warrant results to the defense today or
2  tomorrow, whenever we get the hard drive from them to produce.
3  It is a reproduction of a subset of search warrant results.
4          THE COURT:  Okay.
5          MS. MCCALLUM:  The volume of discovery is in the
6  millions of documents.  It is really enormous.  It consists of
7  trading records, banking records, all of the electronic search
8  warrant results and so on.  SEC transcripts have been provided
9  as well as FINRA testimony transcripts and documents from both
10 those entities, including the SEC database in this case.
11         In light of in particular, the incredible volume of
12 discovery, the parties propose a somewhat more lengthy motion
13 schedule than would normally think be imposed, but we think it
14 is warranted in this case.  The proposal is that motions from
15 the defense be due approximately six months from now and the
16 date that we would propose to the court is May 27 that the
17 government have approximately a month to respond, June 24, and
18 that the defense then be able to submit its reply, if any,
19 July 15.
20         Then in terms of the trial date, proposed trial date,
21 the defense, we have conferred with the defense, their proposal
22 is that it be set for March of 2017.  The government would
23 simply leave it to the court to determine what trial date makes
24 sense from its perspective in light of the proposed motion
25 schedule.

1                THE COURT:  Okay.  Thank you.

2                Mr. Siegal, anything?

3                MR. SIEGAL:  I don't really have anything to add to

4    that, your Honor.  I would also note that, as I understand it,

5    there may be a superseder in the offing.  I don't know what

6    schedule is for that.  The defense has in mind incorporating

7    that piece of it into the schedule as well.

8                I'll just say that in terms of the trial schedule that

9    we are asking for, this is a case where the government needed

10   four years to investigate the case and go through the material

11   that they searched and seized no later than January of 2012.

12   We don't think that the schedule we are asking for is

13   unreasonably long.

14               THE COURT:  Couple questions.  Let me begin with

15   Ms. McCallum.  The anticipated superseder, what is the time

16   frame for that?

17               MS. MCCALLUM:  We are hopeful that that will happen

18   quickly, your Honor.  Candidly, we are awaiting materials in

19   order to be able to return that superseder.  The superseding

20   charges relate to potential tax charges.

21               THE COURT:  Okay.

22               MS. MCCALLUM:  We hope that is a matter of a month or

23   two.

24               THE COURT:  I do think we should set a date for that.

25   Unless the government has an objection to that, we can set it

FCDSWEYC

1   for two months out.
2          MS. MCCALLUM:  Well, the problem we have, your Honor,
3   is simply that we are sort of at the mercy of another country
4   producing documents to us.
5          THE COURT:  It might help if you tell them you have a
6   court order date.
7          MS. MCCALLUM:  That is certainly true, your Honor.  I
8   suppose we would reserve the right to maybe, if it is
9   impossible to do it in two months, to come back to the court
10  and beg for more time.
11         THE COURT:  You can always ask.
12         MS. MCCALLUM:  Certainly.
13         THE COURT:  Mr. Siegal, any objection?
14         MR. SIEGAL:  No objection, your Honor.
15         THE COURT:  Two months from now.  We will have, if
16  there will be a superseding indictment, one that is
17  anticipated, it will happen on or before two months from now,
18  from today.
19         Mr. Siegal, based on your review thus far, are you in
20  a position to indicate whether there are any specific
21  anticipated motions?
22         MR. SIEGAL:  Well, yes, your Honor.  We are going to
23  get to one of the anticipated motions in a moment.  I can start
24  now, if your Honor likes.  So one of the motions we are
25  contemplating relates directly to how the search was done and

1   what has been done with the documents since the search.  There
2   were two corrections actually, your Honor, one undertaken in
3   the offices of New York, NYG Capitol in New York, which is an
4   office that Mr. Wey worked out of and one at Mr. Wey's family
5   home.
6            The search seems to in those searches gathered up
7   essentially every scrap of paper and every electronic device in
8   both locations with a couple of small exceptions that related
9   to privilege set aside that they agreed to at the time.  I
10  understand that the government's rationale for literally taking
11  every electronic data byte available in both locations was that
12  it was too voluminous to wade through at the time on location.
13           We have a couple of motions relating to the search
14  warrants.  First, on their face, we believe they were
15  unreasonably overbroad in the sense that they essentially asked
16  for every scrap of paper in the possession of my client and his
17  wife.  In addition to that, even assuming the warrant on its
18  face wasn't unconstitutionally a general warrant, our position
19  is going to be the way that it was managed subsequent to the
20  seizure of that data was unconstitutionally unreasonably
21  overbroad.  We received back some copies and some original
22  media back in 2012.  When I say "we," talking about the
23  company, which had separate lawyers as well as Mr. Wey, but the
24  government retained copies of everything and still retains it
25  to this day.

|   |   |
|---|---|
| 1 | Our position is that violates the Constitution as |
| 2 | articulated in the Second Circuit's 2014 opinion in the Gandy |
| 3 | case.  I can give you the citation for that, your Honor. |
| 4 | THE COURT:  I am aware of the opinion. |
| 5 | MR. SIEGAL:  All right.  As I understand it, the |
| 6 | government ran a search back in 2012 based on search terms.  We |
| 7 | don't know what their search terms were.  We can guess at what |
| 8 | they were.  We haven't yet seen the results of that search.  I |
| 9 | know Ms. McCallum is planning on giving us a copy of that |
| 10 | search.  I understand that they did another subsequent search |
| 11 | using different terms more recently and that they want to rerun |
| 12 | the search they did back in 2012 because they have discovered a |
| 13 | problem.  Now I am wading into technology that I may be |
| 14 | speaking over my head here, but there is some problem with the |
| 15 | hash values assigned by the computer program that was run in |
| 16 | 2012, and they have got those and they need to rerun that |
| 17 | search. |
| 18 | Our motions are going to be, in part, relating to |
| 19 | whether or not they ought to be able to rerun that search.  We |
| 20 | object to them rerunning that search.  We object to them having |
| 21 | run a new search in 2014 or 2015, whenever they ran that new |
| 22 | search against the full set of documents.  We object to the |
| 23 | fact that they have been retained for almost four years at this |
| 24 | point.  Our position is materials that were deemed not to be |
| 25 | covered by the search warrant on the basis of their own |

FCDSWEYC

1  definition in the searches they did back in 2012, those would
2  have been purged and they weren't.
3      We believe we have a serious Fourth Amendment
4  violation in this case and we are going to be making a motion
5  on that point, at least. There is probably going to be
6  discovery motions as well, your Honor. It is my hope that we
7  can work out some of the discovery issues over the next several
8  months, and Ms. McCallum and I have a good working relationship
9  in terms of discussing these issues. I won't bother your Honor
10 with too many of the details this.
11     While Ms. McCallum is correct that we have received
12 transcripts of on-the-record testimony at the SEC and at FINRA,
13 we believe there is a number of witness interviews that we
14 ought to receive the notes for. We believe there is a good
15 deal of Brady and Giglio material located in the notes. We
16 don't have any of those yet. We don't think we ought to have
17 to wait until the eve of trial to receive information. That is
18 going to be part of our motion.
19     In addition, we will probably be making a motion for
20 bill of particulars, given how little specificity is in the
21 indictment. Again, these are issues that we may be able to
22 work out at some level with the government prior to making our
23 motion. That is in flux.
24     THE COURT: All right. I suppose one question that
25 comes to mind in thinking about the schedule is whether, even

1   if I accept this sort of six-month time frame for motions, it
2   sounds like at least with the search, these motions, the Fourth
3   Amendment motions, those might be able to be able to be brought
4   sooner than six months' time.
5           MR. SIEGAL:  I'll speak to that, your Honor.  In
6   addition to sort of the facial challenge that I have been
7   talking about, one of the things we are trying to determine is
8   what was known to the government back in 2011.  As far as I
9   understand, this investigation began sometime in the middle of
10  2011, if not earlier than that.  That wasn't included in the
11  search warrant affidavit.
12          We may end up having a Franks hearing with respect to
13  that, and I frankly want to put it all in one sets of papers.
14  I don't think we can make the second piece of if we have a much
15  better drive into the documentary evidence that was in the
16  possession of the agents, case agents, in the case.  I think
17  there is, in particular, some legal theories in the search
18  warrant that have carried over into the indictment I think are
19  undermined by information that the government knew at the time
20  the application was made for the search warrant.
21          I am not in a position any earlier than what we are
22  talking about in order to make that set of motions.  It seems
23  from an efficiency standpoint, one set of motions would just
24  make sense.
25          THE COURT:  Okay.  Just thinking through the schedule,

1    I think I am comfortable setting the six-month date for the
2    filing of all motions and the schedule that has been proposed.
3    So the question in my mind is whether, in light of what is
4    anticipated, which may be able to work some of it out, it
5    sounds as if you won't work it all out, you might need some
6    time, might need a hearing.  I am just thinking in my own head
7    as I sit here whether I want to set the trial date for March or
8    something else.
9             MR. SIEGAL:  Your Honor, we have thought this through
10   a great deal in my offices and thought precisely about what
11   your Honor is thinking about.  Frankly, given all the issues,
12   the complicated issues that we have got going on here,
13   including issues that may relate to overseas evidence that we
14   may have to go get on some sort of a joint basis if that is
15   possible, so that may need your Honor's intervention as well.
16   I just think it doesn't make sense to set the trial any earlier
17   than that, given what has to be worked out.
18             Again, I'll just say again, when Ms. McCallum says
19   there is millions of documents, that is no exaggeration.  Just
20   the SEC's production alone is three million documents.  That
21   includes, I would say, third-party documents from maybe 20, 30
22   different sources, from law firms, from banks, from
23   underwriting firms, from securities accounts, from transfer
24   agents.  They have blue sheets.  It is an enormous amount of
25   material.

1            Then another piece that we are dealing with right now,
2    your Honor, we have gotten what could be regarded as
3    duplicative information at several different times.  Part of
4    our project just over the last month or so, your Honor, which
5    is continuing, is trying to figure out a way not to look at the
6    same set of stuff two or three times.  This is not a criticism
7    of the government, but we got images of 20, 30 electronic
8    devices back in 2012.  We have gotten what purport to be
9    identical images in 2015, but we have to compare those to one
10   another to make sure, instead of looking at six million
11   documents, we only look at three million, and that project
12   alone is a technological shaping that we are still working
13   through.
14           This is not a clean process.  We haven't really even
15   gotten to the stage that we are looking substantive through the
16   documents.  What we are doing now is trying to find a way to
17   manage how to review them.  I don't think there is any
18   exaggeration in terms of how much material we have to deal
19   with.
20           THE COURT:  Ms. McCallum, to the best you can, if we
21   go to trial, how long a trial do you anticipate?
22           MS. MCCALLUM:  Our best estimate is four to six weeks,
23   your Honor.
24           THE COURT:  All right.  I have some concerns about the
25   length of time.  I continue to be persuaded that counsel are

1    doing their best efforts to work through it and working
2    together where they can, and obviously it is both a
3    technological and substantive effort.  I think what I'll do is
4    adopt the proposal that you have suggested.
5         Given the length of trial, I think we have to get it
6    on the calendar now.  There is no other choice, otherwise it
7    will be significantly farther out in order to find four to six
8    weeks that I can get on my calendar and that you can get on
9    your calendar.
10        At face, I'll adopt the proposal because it appears
11   reasonable and consistent with what is needed to be done by
12   both sides as well as the court in resolving the anticipated
13   motions.  The proposed motion schedule is hereby adopted to the
14   extent the defense will file motions.  They had be filed on or
15   before May 27, 2016.  Opposition by the government on or before
16   June 24.  Reply, if any, July 15.
17        I'll say this, Mr. Siegel, with hopes that it would
18   move you to do so, if you can, if any aspects of those motions
19   can be brought sooner to give the court more time to resolve
20   them, that would be helpful, especially if the volume of
21   motions that you anticipate continues to be in the offing.  You
22   have got your outside date.
23        MR. SIEGAL:  Thank you very much, your Honor,
24   especially with respect to the discovery issues.  We can try to
25   see if we can resolve those on an earlier schedule.

1          THE COURT:  Thank you.  Trial we will set for -- the
2     first full week in March is March 6, 2017.
3          I set firm trial dates so that we can all do the work
4     that we need to do within the anticipated time and set our
5     expectations around it and help ensure a speedy trial can be
6     achieved.  I do always say, barring exceptional circumstances,
7     the date we set for trial will be the date we proceed to trial
8     if we are going forward.
9          Mr. Wey, I do want to make sure that you understand
10    that sometimes things happen in cases, defendants ask for new
11    lawyers to come in.  Matters such as that I'll be open to any
12    requests, but with the understanding now that anyone new who
13    comes into the case or any other related requests are done with
14    the understanding that anyone who comes into the case must work
15    with the schedule that we set today.
16         Okay, Mr. Wey?
17         THE DEFENDANT:  Thank you, your Honor.  I understand.
18    Thank you.
19         THE COURT:  Thank you.
20         We have got a date for the superseding indictment,
21    motion schedule, and trial date.
22         Then let me ask Ms. McCallum.
23         MS. MCCALLUM:  Your Honor, the government asks that
24    the court exclude time until the trial date in the interest of
25    justice for all the reasons that the court has articulated to

1    permit the parties to prepare for motions and for trial.
2             THE COURT:  Mr. Siegal?
3             MR. SIEGAL:  No objection, your Honor.
4             THE COURT:  I do find that the ends of justice served
5    by granting the exclusion from speedy trial computations for
6    the period from today's date through March 6, 2017 outweigh the
7    interest of the public and the defendant in a speedy trial.
8    This time is necessary for the completion of production of
9    discovery materials, time for the defense to manage and review
10   those voluminous discovery materials, time for the defendant to
11   consider and prepare any motions, as well as time for the
12   parties to continue their negotiations with respect to any
13   additional anticipated motions, time for the court to resolve
14   any such motions, and in the absence of any resolution of the
15   case, time for the parties to prepare for trial.
16            Ms. McCallum, anything else I can address at this
17   time?
18            MS. MCCALLUM:  Nothing from the government, your
19   Honor.
20            THE COURT:  Mr. Siegal?
21            MR. SIEGAL:  One moment, your Honor.
22            Nothing, your Honor.
23            THE COURT:  I think the only other thing to propose
24   would be a status conference.  I think what we will do is, I
25   will set a date for a status letter at the time that we have

FCDSWEYC

1  indicated.  Two months' time would be my proposal, time
2  indicated for the filing of the superseding indictment, if that
3  is going to happen.  You can provide me a status update in that
4  letter, or if the parties would like a further conference to
5  discuss any issues that are arising or the schedule, simply
6  request that in a letter.
7        Two months from today, February 15, which will be the
8  date for the superceding indictment, if it will be filed, and a
9  joint status letter from the parties indicating if you would
10 like a conference scheduled sooner after to discuss any issues
11 that are developing.
12        If there is nothing further, we are adjourned.  Thank
13 you.
14        (Adjourned)