UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br> v.<br><br>BENJAMIN WEY and<br>SEREF DOĞAN ERBEK,<br><br>                    Defendants. | Crim. Action No.: 15-CR-00611 (AJN) |

## <u>REPLY DECLARATION OF DAVID SIEGAL</u>

David Siegal hereby declares pursuant to 28 U.S.C. § 1746:

1.      I am a partner with the law firm of Haynes and Boone, LLP and counsel for

Defendant Benjamin Wey in this case.  I have been Mr. Wey's attorney in connection with the

investigation that led to this Indictment since on or about January 27, 2012.

2.      I submit this reply declaration in further support of Mr. Wey's Motion to

Suppress, to Dismiss the Indictment, and For Other Relief (the "Motion to Suppress").  I have

personal knowledge of the facts stated herein, and I believe each of them is true and correct.

3.      Annexed hereto as Exhibit 46 is a copy of a December 19, 2014 Wall Street

Journal article entitled, "*Are You Sure You Want to Use Email?*" by Don Clark, Shira Ovide and

Elizabeth Dwoskin.

4.      Annexed hereto as Exhibit 47 is a list comparing the search terms authorized by

Exhibit B of the search warrant with the expanded list of search terms run by the Government in

the spring of 2013, with highlighting to indicate the search terms that were not included in

Exhibit B to the search warrants.

5.      Annexed hereto as Exhibit 48 is an agreement between Mr. Wey and the

Oklahoma Department of Securities dated July 13, 2005.

6.      In its opposition to Mr. Wey's Motion to Suppress, the Government states that its search terms were "developed in consultation with the defense."  (Opp., p. 53)  While I do not know to what this refers, apart from NYGG's counsel having provided lists of attorney names to the Government in 2012, I do not recall any "consultation" with the Government on its taint process or its search-term development by NYGG's counsel or myself.

**** 

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: August 12, 2016

s/ David Siegal
David Siegal

# EXHIBIT 46

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

http://www.wsj.com/articles/are-you-sure-you-want-to-use-email-1419030075

TECH

# Are You Sure You Want to Use Email?

## Companies Rethink Policies About Deleting Messages in Wake of Sony Leaks



Devastating leaks from Sony's computer systems have dramatized the risks of storing corporate email for extended periods. Workers remove a poster-banner for 'The Interview' from a billboard in Hollywood. *AGENCE FRANCE-PRESSE/GETTY IMAGES*

By **DON CLARK, SHIRA OVIDE** and **ELIZABETH DWOSKIN**
Dec. 19, 2014 6:01 p.m. ET

Devastating leaks from Sony Corp.'s computer systems have dramatized the risks of storing corporate email for extended periods. Some people in Silicon Valley wonder if it is time to rethink that practice.

Electronic mail, despite many attempts to replace it, remains a vital communications tool and an ad-hoc filing cabinet for employees at most companies. Retrieving

important information and attachments by searching mail—which can be stored indefinitely—is simple and fast.

ADVERTISING

Learn more



InRead invented by Teads

But as was highlighted in the Sony hack, this puts a single trove of both potentially embarrassing communication and critical company secrets within easy reach of cybercriminals. (Related Article: Obama Says Sony 'Made a Mistake' Canceling Film)

Many long-established companies have for some time had email-deletion policies, but for a different reason: Complying with demands for stored communication in legal cases can be expensive.

These policies typically call for automatic deletion of emails after a set period, often after 90 or 120 days. But many companies—especially startups—have no retention policies.

Some experts view the startling success of attackers in breaching Sony's defenses and distributing sensitive emails—an incident that U.S. officials have linked to North Korea —as a powerful argument for prompt destruction of nonessential messages.

"My belief is the retention policy should be 30 days," said Steve Blank, a veteran Silicon Valley entrepreneur and academic. "I think the Sony-North Korea thing just kind of reinforces the fact."

There are signs that some companies are heeding such calls. Cloud Sherpas, an Atlanta-based firm that helps companies buy Gmail and other workplace technology from Google Inc. and others, said two customers have changed their email retention systems since the Sony hacking.

**WSJ+**  INVITES + OFFERS + INSPIRATION    **DISCOVER MORE**

One of them, a big technology manufacturing firm on the West Coast, asked for a customized software process to purge email of specific users whenever the business deemed it necessary, said David Hoff, Cloud Sherpas' chief technology officer. The other customer, a midsize manufacturer, added a Google function to automatically delete emails after a year, with a shared "safe" folder in which employees could stow emails that they needed to keep longer.

Deleting messages isn't necessarily an absolute defense against theft, since storage systems frequently retain traces of data that can be retrieved under some circumstances.

A Sony spokesman didn't respond to questions about the company's data-retention policies or details about the breach.

---

*'My belief is the retention policy should be 30 days. I think the Sony-North Korea thing just kind of reinforces the fact.'*

—Steve Blank, a veteran Silicon Valley entrepreneur

---

Amid the uncertainty, some tech companies say they are reviewing their security precautions, in part because customers in government and other sectors are demanding to know their data will be safe.

"They have a lot more questions for us as we sell into those accounts," said Douglas Murray, chief executive of Big Switch Networks Inc., a Silicon Valley startup that is using a security firm to evaluate its safeguards. "People are concerned."

Executives at some startups say the very idea of regularly deleting emails is a foreign concept, and may be too drastic a solution.

"Destroying email that has become a repository for employees to go back and do research will be a significant culture change," said Justin Somaini, chief technology officer at Box Inc., which offers online data storage and related services. "A better approach than deleting email is the application of healthy security practices on the content itself."

Another familiar option is encrypting mails to make them unintelligible in the event they are stolen. Few companies encrypt all of their email, though, in part because many employees correspond with others outside their organizations who aren't using the technology.

Some startups, meanwhile, have been pushing alternatives to email that they believe improve collaboration. They include Slack Technologies Inc. and HipChat.

Matt Mullenweg, chief executive of the startup Automaticc, said it mainly leans on tools such as Slack and hardly uses email anymore. But those services also generate data that could tempt attackers.

"Search is one of the big features of these tools, so deleting old stuff would be counterproductive," Mr. Mullenweg said, who said his company has no plans to start deleting emails.

Many startups also rely on services like Google's Gmail, rather than storing and managing email on their own servers as established companies tend to do.



President Barack Obama, in a news conference Friday, said the U.S. will respond to the hacking it traced to North Korea.
*KEVIN LAMARQUE/REUTERS*

"We expect our email to stick around forever," said Jonathan Gray, chief executive of the big data startup Cask, which uses Gmail. "I think most would be best served thinking that way."

Mr. Gray said his company has strict policies around handling sensitive data from its enterprise customers, but had no internal policy governing how email data would be deleted.

John Schroeder, chief executive of big data startup MapR, said the company takes a similar stance. "We haven't implemented a deletion policy of any kind," he said, adding that the company has strict policies for handling customer data.

At the opposite extreme are companies like Intel Corp., which grappled with email retention issues in a private antitrust suit by rival Advanced Micro Devices Inc. that was settled in 2009.

Some Intel employees failed to take the proper measures to stop relevant emails from being destroyed by the company's auto-delete system.

Now the

WSJ.D

**WSJ.D is the Journal's home for tech news, analysis and product reviews.**

- Sony Made It Easy but Anyone Could Get Hacked; Here's Some Advice (http://www.wsj.com/articles/sony-made-it-easy-but-any-of-us-could-get-hacked-1419002701)
- Who Needs Amazon or Wal-Mart? China Is Cutting Out the Middleman (http://www.wsj.com/articles/who-needs-amazon-or-wal-mart-china-cuts-out-the-middleman-1418950309)
- Yahoo Halts Flickr Photo Sales Amid Backlash (http://blogs.wsj.com/digits/2014/12/18/yahoo-halts-flickr-photo-sales-amid-backlash/)
- A Look at the Year's Tech Hits and Misses, and What's Up for 2015 (http://blogs.wsj.com/personal-technology/2014/12/19/a-look-at-the-years-tech-hits-and-misses-and-whats-up-for-2015/)

company automatically deletes emails after 90 days, unless employees individually take action to store them in folders, said Chuck Mulloy, an Intel spokesman.

These days, Silicon Valley companies seem more interested in reducing the risks with additional technology. Some entrepreneurs have advocated messaging systems, along the lines of the consumer service Snapchat, that are designed to delete messages soon after they are viewed.

Others believe that companies should develop technology that gives individuals or corporate owners of that data the ability to destroy it remotely if it falls into the wrong hands, though the feasibility of the approach remains unclear.

"The sender should have the right to delete the email," said Muddu Sudhakar, chief executive of Caspida, a Silicon Valley security startup. "These systems need to evolve to support that capability."

*—Steven Rosenbush and Evelyn M. Rusli contributed to this article.*

**Write to** Don Clark at don.clark@wsj.com, Shira Ovide at shira.ovide@wsj.com and Elizabeth Dwoskin at elizabeth.dwoskin@wsj.com

# EXHIBIT 47

Search Terms for Electronic Devices Seized in Jan. 2012 searches of Wey Office and Apartment
As of May 3, 2013

23 Rue Ferdinand-Hodler
32 Hollywood Road
Adam Cavise
Adges
Adrian Alfred Crimeni
Adriana Walker
Advantage Consultants
AgFeed
Ahmed Mohidin
aka Mary-Chantal Souilem
Akfgrif Neunie
Akil Channer
Albert Lee
Alex Li
Alexander Kibrik
Alexander Velez
Alexis Rittereiser
Aliya Morgan
Ana Cicero
Andrea Vellios
Andrew Aspromonte
Andrew Drake Jobe
Anthony DiGiovanni, Jr.
Anthony DiGiovanni, Sr.
Anthony Valente
Arnold Staloff
Bai Weijiang
Bank of Communications
Bank of East Asia
Barney Monte
Barry Cohen
Barry Konig
Barry Slotnick
Becky Cragin
Bei Lu
Ben Wey Family Trust
Bicornio Real Estate Ltd. (Signatory:)
Bill Chongtong Chen
Bill He
BMJT Holdings
BMO Capital Markets
Bodisen Biotech
Boris Hochman
Brandon Stewart
Brenda Diagnault
Brian Walker
bright_Li@2G3.net

Search Terms for Electronic Devices Seized in Jan. 2012 searches of Wey Office and Apartment
As of May 3, 2013

Broadridge
Broadridge
Brown Brothers Harriman
Brown Brothers Harriman
Bryan Kimbrough
BW Insurance Trust
bwey
Calvin Vaval
Caribe Management
Carol Calabro
Cartan Holdings, Inc.
Chang Yuan WANG
Changyuan WANG
Chantal SOUILEM
Charles Schiro
Chase
Chen Ming
Chen Sheng
Chen ZHANG
China Natural Gas
Chris Cragin
Christopher Urbanski
Citibank
Citigroup
Claudia Allon
CleanTech
Corie Valente
Coventure International Inc.
Credit Suisse
Crescent Liu
Crescent LIU
Damion Escabar
Daniel Walker
Daria Rizzello
David Lu
David McCusker
Dayle Byers
Deer Consumer Products
Deerfield Road, LLC
Deutsche Bank
Dixon Chen
Dogan Erbek

Dong Xin, a/k/a Xin Dong
Douglas Shebroe
Du Wei
Duane Jobe

Search Terms for Electronic Devices Seized in Jan. 2012 searches of Wey Office and Apartment
As of May 3, 2013

Dunmore Global Investments
E trade
Edward (Eddie) Ninive
Edward Irvin
Edward McMillan
Edward Mostafa
Elijah Graham
Elizabeth (Liz) Scholander
erbek@estgeneva.ch
Erika Newman
EST S.A.
Ester Saintable
Ethel Konig
Ever Trust
Everett Leonidas
Everton Capital
Farley Wang
farleycyw@yahoo.com
Federal Express
FedX
Finchley International Investments
First Merger Capital
First Merger Capital (Delaware), Inc.
First Merger Capital, Inc.
Focus Trading Investments
Four Tong Investments
Francine Curcio
Francis Perez
Francis Vetere
Frank DiMartini
Fred Rittereiser
Fufuko Walker
FusionTech
Futmon Holdings
Gary Cicero
Gary Smalley
Genovie Fernandez
George L. Calhoun
George Vellios
Gerard Diagnault
Gineva Escabar
GKM
Goldman Kurland
Graham Walker
Grayling
Greg Mulligan
Guo Sheng

Search Terms for Electronic Devices Seized in Jan. 2012 searches of Wey Office and Apartment
As of May 3, 2013

Guy Durand
Han Bo
Han Hua
Harban Capital
Harlesten Assets
Harold Walker, a/k/a "Jim Walker"
Herman Palmero
Holladay (Stock Transfer)
Hong Ju Wang
HSBC
Huajun Ai
Ike Naim
Interbridge Capital Advisors
Interwest Stock Transfer
Island Stock Transfer
J.P. Morgan
Jacquelyn Hart
Jacquelyn Rittereiser
James Hayes
James Jun Wang a/k/a Wang James Jun
James Schiro
James Shaughnessy
James Walker
James Wilent
Jameson Capital
Jason Schlombs
Jay Feeney
Jefferies
Jeffrey Gruehn
Jennifer Ninive
Jiahua WANG
Jingyi LIU
Joe Giamichael
John Adams
John Baginski
John Cragin
John Stadler
John Wang
Jonathan Woo
Jorge C. Ferreira
Joseph Allen
Joseph B. Gatkuoth
Joseph Giamichael
Joseph J. Steward
Joseph Naselli
Joseph R. Oleske
Joseph Rizzello

Search Terms for Electronic Devices Seized in Jan. 2012 searches of Wey Office and Apartment
As of May 3, 2013

Joseph Valente
Josephine Aspromonte
JTE Insurance Trust
Justin Miller
Justin Rizzello
Kansas Rosalind Day
Karen Walker
Katherine I. Walker
Kathi Harms
Kathy Ninive
Kathy ZHANG
Katya Voronchuk
Keisha Harris
Keller Walker
Kevin Pickard
Kim Cragin
Kinwick
Labron Toles
Lai Yin Ling
Laura Tizio
Legent
Leroy Urbanski
Li Jun aka Jun Li
LI We
Li Yan a/k/a Yan Li
Li Yan, a/k/a Yan Li
Linda LIU aka Jia LIU
lindajialiu@gmail.com
lindajialiu@yahoo.com
Liu Junwei
Liu Xinting
liujia1018@vip.sina.com
Louise Adams
Lu Yuan
Luke Walker
Ma Wen
Mack L. Miller
Maline Rizzello
Marc Crimeni
Marie Robinson
Mark Robinson
Marsha Uchimoto
Martin Gilmartin
Martinez-Ayme
Mary Anne Wilent
Maryna Bilyska
Mascoma Savings Bank

Search Terms for Electronic Devices Seized in Jan. 2012 searches of Wey Office and Apartment
As of May 3, 2013

Matthew Apfel
Maureen Gearty
Meadow Investments Group
Median Asset Investments
Melinda Cruz
Metlife
Michael Dugan
Michael Perlik
Michaela Wey Family Trust
Michal Perlik
Michelle Harris
Ming LI a/k/a LI Ming
Morgan Stanley
mwei@nyggroup.com
mwey@nygg.com
Myron Rosenkranz
Nadine Aspromonte
Nan Wang
Nancy Ninive
Nancy Palmero
Nancy Wang
NASD
Nasdaq
New England Securities
New York Global Advisors
New York Global Capital
New York Global Group
New York Global Securities
nicebright@263.net
Nicholas Sinclair
Nicholas Sinclair
Nico Rizzello
Noelle Urbanski
Norma Smalley
Norma Walker
Nova Lifestyle
NYG Capital
NYGC
NYGC Investment Consulting
nygcapital.com
NYGG
nygg.com
nyggroup.com
NYGS
Olga Gutnik
Omar Campbell
Otakar Ungerman

Search Terms for Electronic Devices Seized in Jan. 2012 searches of Wey Office and Apartment
As of May 3, 2013

P.O. Box 3179
P.O. Box 663
Pacific Goldrim Resources
Patricia Aspromonte
Patrick W. Watson
Patty Shaughnessy
Paul Turner
Paul Turner
Pauline Bartley
Peg Lalor
Peifen ZHANG
Peng Guo
Penson
Peter Tsu
Phil Quartuccio
Qian Lu
Quianna Mongol
Quingan SHEN
Radnor
Ramnarain Jaigobind
Raquel Sanchez
Raymond James
Raymond Phillips
Regina Schwartz
Regina Schwartz
Rick Exton
rnewman@newmanmorrison.com
rnewman@nlawglobal.com
Robert Newman
Robert Newman
Robert Newman
Robert Rittereiser
Robert Volpe
Rodman & Renshaw
Ron Basu
Ron Zakai
Ronen Zakai
Roosen Commercial
RRZ Management
Ruide.tang@gmail.com
Rupert Barcoo
Samuel Walker
Sara Urbanski
Sarah WEI
Sarah@nygcapital.com
Scottrade
Seaboard Securities

Search Terms for Electronic Devices Seized in Jan. 2012 searches of Wey Office and Apartment
As of May 3, 2013

SG Private Bank
Shao Huifa
Sharon Staloff
Sherry Pryor
Shiner International
Signature Bank
Signature Stock Transfer
Signature Stock Transfer
Smartheat
Snowcz2004@yahoo.com.uk
Song N. Hui a/k/a Hui Song N
Song Nian Hui, a/k/a Nian Hui Song
Sovereign Managers
Sovereign Trust
Stephanie McCusker
Stephen Barbot
Stephen Lambrix
Stephen M. Barbot
Sterne Agee
Steros Christoforou
Steve Day
Stevens Resources
Strong Growth Capital
Stuart A. Jeffrey
Suite 1601-1603
Susanne Mulligan
Tag Events Corporation
Talman Harris
TD Ameritrade
TD Bank
Tereza Ungermanova a/k/a Teresa Ungerman
Terry Most
Thelma Robinson
Tian Yi WEI
Tianjin NYGC Investment Consulting
Tianyi WEI
Tianyi Wei Family Trust
Tiffany Fields
Timal Robinson
Timothy Calabro
Timothy S. Orr
TJWS Investment Consulting
Travis McDonald
UBS
user2012@126.com
Venlaw Consultants
Verizon

Search Terms for Electronic Devices Seized in Jan. 2012 searches of Wey Office and Apartment
As of May 3, 2013

Vincent Cervone
Vincent Ficci
Vision Capital
Viviana Escabar
Wallace Mountain Resources
Wang Cheng
Wang Jiahua, a/k/a Jiahua Wang
Wang Yingkai
Wang Yu
Wang Yuan
Wanshuang Zhang
Wayne Bacheler
Wbb219@yahoo.com
We LI
WEI Tian Yi
Wendy Jobe
William Blair
William Ma
William Scholander
William Uchimoto
Witter
Wolf Enterprises
Wonderful Ltd.
Wong Hong
Wu Nan
Yang Xin Yun a/k/a Yun Xin Yang
Yang Xiu Yun, a/k/a Xiu Yun Yang
Yanxia ZHANG
Ye He
Yi Zhang
Yingmao WEI
York Capital Management
You Li Investment Consulting Ltd.
Yuzen HOU
Yvette Rogers
Zapnaps
Zhang Chen, a/k/a Chen Zhang
Zhao Guangyu
Zhe Pang

# EXHIBIT 48



RECEIVED
OKLAHOMA DEPT.
OF SECURITIES

**STATE OF OKLAHOMA
DEPARTMENT OF SECURITIES
FIRST NATIONAL CENTER, SUITE 860
120 NORTH ROBINSON
OKLAHOMA CITY, OKLAHOMA  73102**

In the Matter of:

Benjamin Wei,

          Respondent.                   ODS File No. 02-166

## <u>AGREEMENT</u>

An investigation into the activities of Benjamin Wei was conducted by the Oklahoma Department of Securities (Department), pursuant to the Oklahoma Uniform Securities Act of 2004 (Act), Okla. Stat. tit. 71, §§ 1-101 through 1-701 (Supp. 2003), and the Oklahoma Securities Act (Predecessor Act), Okla. Stat. tit. 71, §§ 1-413, 501, 701-703 (2001 and Supp. 2003), in connection with the offer, sale and/or purchase of securities and the provision of investment advice in and/or from Oklahoma.

On January 22, 1997, Wei was registered under the Predecessor Act as an investment adviser representative of Elite Strong Growth Investment, Inc. (Elite), an investment adviser.  Wei's registration as an investment adviser representative terminated on December 31, 2000.

On January 7, 2000, Wei applied for registration under the Predecessor Act as an agent of his closely held company, Benchmark Securities Group, Inc. (Benchmark Securities), a broker-dealer.  On October 3, 2001, Wei's application terminated without registration.

On April 17, 2000, Wei, individually, and as president of Elite, entered into an agreement with the Department to resolve certain deficiencies uncovered in two on-site examinations of Elite.  Pursuant to the agreement, Wei was not allowed to act in a supervisory capacity for Benchmark Securities.

The Department's investigation revealed that between December 1999 and September 2001, Wei made recommendations to at least two (2) Oklahoma residents for the purchase of shares of Ashton stock and warrants, shares of PharmaPrint stock, and/or shares of Micron Electronics stock that were not suitable for said customers.  Wei failed to disclose the risks associated with the purchase of these securities.  Further, Wei made at least one trade that the customer subsequently claimed was not authorized by the customer.  On several

1

occasions, Wei failed to follow his customer's instructions with regard to their investment accounts.

The investigation further revealed that Wei failed to disclose to his customers a consulting arrangement among PharmaPrint, Elite and Wei, and a consulting agreement executed by Ashton Technology Group, Inc. (Ashton) and Wei as the "U.S. Representative" of Tianjin New Hong Cheng Technology & Trading Co., Ltd. (Tianjin), a People's Republic of China (China) corporation owned by Wei's sister.   Wei had discretionary authority over the Tianjin investment account(s).   Wei did not disclose the consulting agreements to his customers at the time he was recommending and selling Pharmaprint stock and Ashton stockand warrants to such customers.

The investigation further revealed that in 2000, Wei offered and sold an Oklahoma resident an investment evidenced by a "Convertible Note" issued by VICUS.COM, INC.   At the time of the transaction, Wei was not registered under the Predecessor Act to transact business in the state of Oklahoma as an agent of a broker-dealer or an issuer.   The Convertible Note issued by VICUS.COM, INC. was not registered under the Predecessor Act.

Without admitting or denying the findings by the Administrator, Wei desires to resolve the issues raised in the investigation expeditiously and in a manner consistent with the purposes fairly intended by the policies and provisions of the Act and the Predecessor Act.

NOW THEREFORE, the parties agree as follows:

1.      **Censure.**  Respondent consents to the issuance of a censure (the "Order of Censure") and voluntarily waives his right to notice, hearing and appeal as provided by the Act, the Predecessor Act, the Rules of the Oklahoma Securities Commission and the Administrator of the Department of Securities ("Rules"), and the Oklahoma Administrative Procedures Act, Okla. Stat. *tit.* 75, § 250 *et. seq.*

2.      **Prohibition to Conduct Business.**   Respondent agrees that subsequent to the execution of this Agreement he shall not request to register as a broker-dealer, broker-dealer agent, investment adviser, investment adviser representative and/or issuer agent under the Act.   Respondent further agrees that he shall not transact securities business on behalf of an issuer of securities or as a broker-dealer, broker-dealer agent, investment adviser, investment adviser representative and/or issuer agent in and/or from the state of Oklahoma.

3.      **Entire Agreement.**  Wei voluntarily consents to the issuance of this Agreement and the Order of Censure and represents that the consent and waivers contained herein are voluntary and given without threat, offer, promise, or inducement of any kind or nature having been made or given by the

2

Department, its staff, the Administrator, or the Oklahoma Securities Commission. Other than the Order of Censure, this writing constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any and all prior and contemporaneous agreements, representations and understandings of the parties. No supplement, modification or amendment to this Agreement shall be binding unless executed in writing by each of the parties hereto.

4.   **Limitation on Agreement.**   Nothing in this Agreement shall prohibit the Administrator from furnishing information to any other properly constituted agency or authority. In the event any other agency or authority commences an action in connection with information obtained by the Administrator against Respondent, the Administrator may assist in such actions as authorized by law. It is further agreed that the execution of this Agreement does not mean that the Administrator has passed in any way upon the merits or qualifications of, or recommended or given approval to, the transactions to which it relates.

5.   **Effective Date.**   This Agreement shall be effective as of the date on which it is signed by the Administrator as set forth below his signature hereto.

6.   **Consideration.**   In consideration for this Agreement, the Administrator will not take further action against Wei in connection with the activities described above provided, however, should Wei fail to comply with the terms of this Agreement in any material respect or if Wei has made any false or misleading statements to the Department in connection with this matter, the Department will initiate action against Wei as authorized by the Act and/or the Predecessor Act.

7.   **Applicability.**   This Agreement applies only to the activities of Wei and to no others.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date and year set forth below their signatures hereto.

**Benjamin Wei**

Date: _____

**OKLAHOMA DEPARTMENT OF SECURITIES:**

By: _____
Irving L. Faught, Administrator

Date:   JULY 13, 2005

3

**STATE OF OKLAHOMA**
**DEPARTMENT OF SECURITIES**
**THE FIRST NATIONAL CENTER, SUITE 860**
**120 NORTH ROBINSON**
**OKLAHOMA CITY, OKLAHOMA 73102**

FILED
JUL 13 2005
by the
Administrator

In the Matter of:

Benjamin Wei,

       Respondent.         ODS File No. 02-166

## ORDER OF CENSURE

  The Oklahoma Department of Securities (Department) conducted an investigation into the activities of the named Respondent pursuant to the Oklahoma Uniform Securities Act of 2004 (Act), Okla. Stat. tit. 71, §§ 1-101 through 1-701 (Supp. 2003), and the Oklahoma Securities Act (Predecessor Act), Okla. Stat. tit. 71, §§ 1-413, 501, 701-703 (2001 and Supp. 2003).

  In order to resolve the issues raised in connection with the Department's investigation, Respondent voluntarily executed the Agreement that is attached hereto as Exhibit "A" and incorporated herein by reference and consented to the issuance of this Order.

  **IT IS HEREBY ORDERED THAT** Benjamin Wei is censured for violations of Sections 101, 201 and 301 of the Predecessor Act, and 660:10-7-42 and 660-10-5-42 of the Rules of the Oklahoma Securities Commission and the Administrator of the Department of Securities.

  Witness my Hand and the Official Seal of the Oklahoma Department of Securities this 13th day of July, 2005.

(SEAL)

IRVING L. FAUGHT, ADMINISTRATOR
OF THE OKLAHOMA DEPARTMENT OF SECURITIES

CERTIFICATE OF MAILING

The undersigned hereby certifies that on the 13th day of July, 2005, a true and correct copy of the above and foregoing Agreement and Order of Censure was mailed to:

Richard J. Babnick, Jr., Esq.
Sichenzia Ross Friedman Ference L.L.P.
1065 Avenue of the Americas, 21st Floor
New York, New York 10018

Brenda London
Paralegal