UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BENJAMIN WEY,<br>   a/k/a "Benjamin Wei,"<br>   a/k/a "Tianbing Wei," *and*<br><br>SEREF DOGAN ERBEK,<br>   a/k/a "Dogan Erbek,"<br><br>                                  *Defendants.* | No. 15-CR-611 (AJN) |

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH
## THIRD-PARTY SUBPOENA DIRECTED TO NASDAQ, INC.

Nasdaq, Inc. respectfully submits this memorandum in support of its motion pursuant to Federal Rule of Criminal Procedure 17(c)(2) to quash the subpoena served on it by defendant Benjamin Wey. Although Nasdaq is ready and willing to produce many of the requested documents as a compromise, Nasdaq objects to the subpoena because it seeks disclosure of confidential investigative and deliberative records related to particular issuers' applications for listing on Nasdaq's exchange. Those documents are protected against disclosure by Nasdaq's absolute immunity, as well as the investigative and deliberative-process privileges, because Nasdaq is a self-regulatory organization vested by Congress with oversight of the national securities markets. The subpoena should also be quashed for failure to satisfy the stringent requirements of Rule 17(c).

### FACTUAL BACKGROUND

Nasdaq, Inc. is a financial services company that owns and operates the Nasdaq Stock Market (collectively "Nasdaq"), a national stock exchange registered with the Securities and

1

Exchange Commission ("SEC") under 15 U.S.C. § 78f.  *See* In re Application of Nasdaq Stock Market LLC, Exchange Act Release No. 34-53128, 71 Fed. Reg. 3550, 3566 (Jan. 13, 2006).  Accordingly, Nasdaq is a self-regulatory organization ("SRO").  *See* 15 U.S.C. §§ 78c(a)(26).  Congress has endowed SROs with extensive regulatory, enforcement, and adjudicatory authority over the securities markets.  *See id.*; 15 U.S.C. §§ 78f, 78s(b); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007); *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 96 (2d Cir. 2001).  Among Nasdaq's "quintessentially regulatory" functions is overseeing "'the initial and continued inclusion of securities'" on its exchange, because "[i]nclusion of an issue in NASDAQ creates the public expectation that the company meets minimum financial criteria, as well as embracing 'integrity and ethical business practices.'"  *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1214–15 (9th Cir. 1998) (citation omitted), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016).

In September 2015, a federal grand jury indicted defendant Benjamin Wey for securities fraud and several related offenses.  Dkt. 2.  According to the indictment, Wey engineered reverse mergers between various Chinese entities and United States shell companies, resulting in the creation of three companies ("Issuers") secretly controlled by Wey.  *Id.* ¶¶ 8–13.  To create liquidity in these Issuers' securities, Wey purportedly arranged for the Issuers to apply for listing on Nasdaq.  *Id.* ¶ 15.  The indictment further alleges that, because Nasdaq requires each listed issuer to have at least 300 "round-lot" shareholders (that is, 300 shareholders owning at least 100 shares each), Wey "deceptively caused shares of some of the Issuers to be transferred … to dozens of [his] friends, employees, and business associates and/or their family members."  *Id.* ¶ 17.  Both before and after the Issuers were listed on Nasdaq, Wey allegedly profited from manipulating the prices of the Issuers' shares.  *Id.* ¶¶ 18–22.

Also in September 2015, the SEC filed a parallel civil lawsuit against Wey and his associates in the Southern District of New York. *See* Dkt. 1 (No. 15-7116). Consistent with the allegations in the criminal indictment, the SEC alleged that Wey committed securities fraud in connection with the Issuers, including by fraudulently obtaining their listings on Nasdaq. *Id.* ¶¶ 5–6.

In these criminal proceedings, Wey served a subpoena on Nasdaq pursuant to Federal Rule of Criminal Procedure 17(c). The subpoena ordered Nasdaq to produce to Wey's counsel "[a]ll correspondence and records sent or received by" three named Nasdaq employees "relating to, interpreting, or applying NASDAQ's 300 round-lot shareholder requirement, with respect to the listing applications of" each Issuer for distinct time periods. Subpoena, att. A. Counsel for Nasdaq informed Wey's counsel of the grounds for Nasdaq objects to the subpoena, but the parties were unable to reach a compromise regarding a more limited production.

## ARGUMENT

Nasdaq is ready and willing to produce voluntarily many of the documents requested by Wey.[1] But Nasdaq, as a market regulator closely supervised by the SEC, is not required to disclose its internal deliberations and regulatory files, for the same reasons that Wey could not serve a Rule 17(c) subpoena on the SEC requiring it to disclose investigative files and deliberations regarding his case. Wey's subpoena must be quashed for three reasons. First, SROs like Nasdaq are accorded absolute immunity from discovery, including subpoenas like this one, related to Nasdaq's performance of its regulatory responsibilities. Nasdaq is also entitled to invoke the investigative (or law enforcement) and deliberative-process privileges to protect the

---

[1] Nasdaq has offered to provide Wey with all documents responsive to the subpoena that Nasdaq sent to, or received from, the Issuers.

3

documents sought from disclosure. Finally, under Federal Rule of Criminal Procedure 17(c)(2), the subpoena must be quashed to the extent it requires production of material that is irrelevant, inadmissible, or procurable through other means.

### A. As A Self-Regulatory Organization, Nasdaq Enjoys Absolute Immunity From Wey's Subpoena

Nasdaq's role as an SRO excuses it from complying with Wey's subpoena, which seeks the disclosure of documents relating to Nasdaq's core regulatory functions. As noted above, Nasdaq is an SRO because it is registered with the SEC as a national stock exchange. *See* 15 U.S.C. §§ 78c(a)(26), 78f, 78s(b); 71 Fed. Reg. at 3552 (discussing the Nasdaq Stock Market's SRO functions). And it is beyond dispute that SROs "are entitled to *absolute immunity* when they are, in effect, 'acting under the aegis' of their regulatory duties"—that is, when they are performing the sorts of functions that in other contexts may be performed by government agencies protected by sovereign immunity. *DL Capital Grp., LLC v. Nasdaq Stock Market, Inc.*, 409 F.3d 93, 97 (2d Cir. 2005) (emphasis added) (quoting *Sparta Surgical*, 159 F.3d at 1214); *accord In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 126 F. Supp. 3d 342, 355 (S.D.N.Y. 2015).

In addition to shielding SROs from liability and lawsuits in general, absolute immunity also spares them from more specific "burdens of litigation, including discovery." *Barclays*, 126 F. Supp. 3d at 355 (internal quotation marks omitted); *see also X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65 (2d Cir. 1999) (even qualified immunity "protects the official not just from liability but also from … discovery"). Compliance with a subpoena is just such a burden, even when—especially when—the target of the subpoena is not a party to the case. *See Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1103 (8th Cir. 2012) (noting the "potential for severe interference with government functions" resulting from third-party subpoenas); *EPA v. Gen. Elec. Co.*, 197

4

F.3d 592, 597 (2d Cir. 1999) (recognizing that enforcement of a third-party subpoena against a government agency "is barred by sovereign immunity in the absence of a waiver"); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989).

Although Nasdaq is not a government agency or a state actor, Nasdaq's well-recognized immunity squarely applies here because Wey's subpoena seeks disclosure of material at the heart of Nasdaq's regulatory responsibilities. The subpoena demands production of "correspondence and records" related to Nasdaq's application of its 300 round-lot shareholder requirement to the listing applications of the three Issuers described in Wey's indictment. Subpoena, att. A. Among the most essential SRO functions protected by immunity is the enforcement of rules and regulations that apply to exchange members and their listed securities. *See D'Alessio*, 258 F.3d at 106; *Sparta Surgical*, 159 F.3d at 1214 ("the structure of the over-the-counter market vests self-regulatory organizations with regulatory authority on certain issues," including "listing and de-listing stock offerings"). These rules are approved by the SEC and are enforced in the first instance by SROs for the benefit of the investing public. Because Wey's subpoena expressly seeks disclosure of records and communications concerning Nasdaq's enforcement of a listing regulation, Nasdaq has absolute immunity from the subpoena.[2]

B.     **Privilege Protects The Documents At Issue From Disclosure**

Nasdaq is also excused from complying with Wey's subpoena because the materials sought are privileged. *See, e.g.*, *United States v. Friedman*, 854 F.2d 535, 571 (2d Cir. 1988) (a

---

[2] Wey's subpoena is directed to Nasdaq, Inc., but the records requested in fact belong to Nasdaq's subsidiary SRO, the Nasdaq Stock Market LLC. In any event, this makes no difference. Immunity turns on "the nature of the function performed, not the identity of the actor," *Forrester v. White*, 484 U.S. 219, 229 (1988), so affiliates of SROs are protected by absolute immunity when appropriate, *see DL Capital*, 409 F.3d at 99 (recognizing absolute immunity of an SRO's subsidiary).

Rule 17(c) subpoena seeking privileged documents should be quashed). For many of the same essential reasons that SROs like Nasdaq are entitled to absolute immunity, Nasdaq is entitled to invoke the same forms of privilege that are available to government agencies. *See, e.g.*, 15 U.S.C. § 78x(f)(3)(A) (contemplating that SROs have the same forms of privilege as government agencies); *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 224 F.R.D. 133, 138–40 (S.D.N.Y. 2004) (discussing SROs' qualified investigatory privilege). And the materials requested here are protected by the investigative (or law enforcement) privilege and the deliberative-process privilege, which apply to subpoenas issued in criminal cases. *See, e.g.*, *United States v. Orena*, 883 F. Supp. 849, 868 (E.D.N.Y. 1995) (applying the law-enforcement privilege and declining to enforce Rule 17(c) subpoenas that would "disclose law enforcement techniques and procedures"); *In re Sealed Case*, 121 F.3d 729, 737–40 (D.C. Cir. 1997) (indicating that the deliberative-process privilege applies to grand jury subpoenas).

**1.** The investigative privilege shields investigative materials from public view in order "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of the City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988) (applying the privilege to invalidate a Rule 17(c) subpoena against a municipal agency); *see also* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes" from disclosure under the Freedom of Information Act); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984).

These critical public interests are just as pressing when the investigating entity is an SRO (as opposed to a government agency), as courts in this district have repeatedly held. In *Ross v.*

6

*Bolton*, for example, the parties to a securities fraud action moved to compel the National Association of Securities Dealers ("NASD"), another SRO, to comply with subpoenas seeking materials from its investigative files. 106 F.R.D. 22, 23 (S.D.N.Y. 1985). The district court denied the motion, recognizing that even absent a formal statutory privilege, the "strong public interest in maintaining the integrity of effective industry self-regulation" required protecting the interests of NASD in "encouraging witness cooperation and maintaining the integrity of its investigative techniques and files." *Id.* at 23–24. Subsequent similar cases have confirmed that the investigative privilege applies to SROs like Nasdaq. *See, e.g.*, *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 497 (S.D.N.Y. 1985) (New York Mercantile Exchange); *In re Adler, Coleman, Clearing Corp.*, No. 95-08203, 1999 WL 1747410, at *3 (S.D.N.Y. Dec. 8, 1999) (NASD); *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 224 F.R.D. 133, 138–40 (S.D.N.Y. 2004) (Board of Trade of the City of New York, Inc.).

The investigative privilege applies here because Wey's subpoena seeks disclosure of internal files and records pertaining to Nasdaq's regulatory enforcement, in three particular cases, of its 300 round-lot shareholder requirement. *See* Subpoena, att. A. This rule, like other listing standards, helps to prevent securities fraud and enables "exchange[s] to screen issuers and to provide listed status only to bona fide companies that have or … will have sufficient public float, investor base, and trading interest to provide the depth and liquidity necessary to promote fair and orderly markets." Order Approving Proposed Rule Change to Modify Certain of Nasdaq's Initial and Continued Listing Requirements, Exchange Act Release No. 34-57981, 71 Fed. Reg. 35,716, 35,717 (June 24, 2008). But such rules would become much more difficult to enforce if Nasdaq's investigative files were open to review by third parties. Informants would be less likely to voluntarily provide Nasdaq with information, which is a critical investigative

resource because Nasdaq lacks its own subpoena power.  Nasdaq's investigative techniques would be made public, making it easier for targets of enforcement efforts to conceal their wrongdoing.  And disclosure would chill Nasdaq's internal deliberative processes by discouraging investigative and enforcement staff from conferring candidly.  These interests "would clearly be undermined by making [Nasdaq] files fair game for any of the thousands of private securities fraud litigants across the country who wish to shortcut their own discovery efforts and instead to reap the benefits of [Nasdaq's] ongoing, statutorily governed work." *Ross*, 106 F.R.D. at 24.

  **2.** For related reasons, the deliberative-process privilege also protects the materials sought from disclosure.  This privilege is grounded in the common-sense insight that exposing "an agency's decisionmaking process" could "discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." (citations omitted)).  The privilege therefore protects "predecisional and deliberative" documents that "'reflect[] the give-and-take of the consultative process.'" *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006).  Such documents include, for example, "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Cuccaro v. Sec'y of Labor*, 770 F.2d 355, 357 (3d Cir.

1985) (internal quotation marks omitted).  The agency's determination of which documents fall into this category of protected material is entitled to "considerable deference."  *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984).

Wey's subpoena runs headlong into this privilege because it aims to uncover internal "correspondence and records" related to Nasdaq's consideration of the Issuers' applications for listings on Nasdaq's exchange.  Subpoena, att. A.  Many of the targeted documents thus constitute "predecisional and deliberative" material, *Judicial Watch*, 449 F.3d at 151, because they involve the deliberations of particular Nasdaq employees about whether the Issuers' listing applications comply with regulatory requirements.  Making such documents available to any securities fraud defendant would frustrate the purposes of the deliberative-process privilege, which ensures that entities like Nasdaq are not "forced to 'operate in a fishbowl'" when discharging their regulatory responsibilities.  *Dudman*, 815 F.2d at 1567.

C.   **The Subpoena Independently Fails To Satisfy Rule 17(c)**

This Court should also quash Wey's subpoena because it does not satisfy Federal Rule of Criminal Procedure 17(c).  *See United States v. Nixon*, 418 U.S. 683, 698 (1974) (when a subpoena does not satisfy Rule 17(c), there is no need "to reach the claim of privilege").

Under Rule 17(c)(2), a subpoena for documents may be "quash[ed] or modif[ied] … if compliance would be unreasonable or oppressive."  The party seeking disclosure—*not* the party moving to quash—bears the burden of showing that (1) "the documents are evidentiary and relevant"; (2) "they are not otherwise procurable reasonably in advance of trial"; (3) "the party cannot properly prepare for trial without such production and inspection in advance of trial"; and (4) "the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699–700 (footnote omitted).  Put another way, the party seeking disclosure "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Id.* at 700.  Because

9

Rule 17(c) subpoenas are "not intended to provide a means of discovery for criminal cases," *id.* at 698, the standards elucidated in *Nixon* are "exacting," *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 386 (2004).[3]

Wey's subpoena does not pass this stringent test. *First*, the documents sought by Wey's subpoena are not sufficiently relevant to be admissible at trial or to justify intrusion into Nasdaq's files. For evidence to be relevant and admissible in a criminal trial, there must be a nexus between the evidence and the indictment. *See Lopez v. United States*, 373 U.S. 427, 440 ("The function of a criminal trial is to seek out and determine the truth or falsity of the charges brought against the defendant."). In other words, evidence is relevant and admissible only if it would be "of consequence in determining the action," Fed. R. Evid. 401(b)—otherwise, a subpoena seeking disclosure of the evidence is unjustified. In *United States v. Dupree*, for example, the district court quashed a Rule 17(c) subpoena seeking documents falling "well outside the time frame of the counts … charged in the Superseding Indictment" because that evidence "would not be relevant to [the] defense on those counts." No. 10-627, 2011 WL 2006295, at *4 (E.D.N.Y. May 23, 2011).

Under this standard, the documents sought by Wey are neither relevant nor admissible. Although Wey's indictment briefly discusses Nasdaq's approval of the Issuers' listing applications, Dkt. 2 ¶¶ 15–17, Nasdaq's consideration of those applications has nothing to do with the charges ultimately leveled against Wey. In the indictment, for example, the "overt acts" allegedly committed by Wey and his cohorts in furtherance of their conspiracy involved

---

[3] These standards apply to third-party subpoenas. *See, e.g.*, *United States v. Conway*, 615 F. App'x 46, 48 (2d Cir. 2015) (applying *Nixon* to affirm a district court's decision to quash third-party subpoenas); *United States v. Ferguson*, No. 06-137, 2007 WL 2815068, at *3 (D. Conn. Sept. 26, 2007) ("All district courts within this Circuit … have applied *Nixon* to assess the validity of 17(c) subpoenas issued to third parties.").

manipulation of the Issuers' share prices, not deception of Nasdaq. *Id.* ¶ 26. Similarly, the core acts of securities fraud alleged in the indictment are (1) Wey's concealment of "a beneficial ownership interest in excess of five percent of the common stock of each [Issuer]," and (2) the manipulation of the Issuers' stock prices—not circumvention of Nasdaq's listing standards. *Id.* ¶ 28. Nasdaq's consideration and handling of the Issuers' listing applications may be part of the narrative of this case, but there is no reason to think that Wey's guilt or innocence could turn on the details of Nasdaq's decision-making. Wey's subpoena should be quashed because it seeks irrelevant material. *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum Dated Nov. 15, 1993*, 846 F. Supp. 11, 13–14 (S.D.N.Y. 1994).

*Second*, Wey's subpoena is also unreasonable under Rule 17(c) because much of the material he seeks is "otherwise procurable" through other means. *Nixon*, 418 U.S. at 699. Before Wey was indicted, the Issuers identified in the subpoena corresponded with Nasdaq and participated in administrative proceedings related to Nasdaq's regulatory activities. *See, e.g.*, Application of SmartHeat Inc. for Review of Action Taken by Nasdaq Stock Market, LLC, Exchange Act Release No. 34-73555, 110 SEC Docket 935 (Nov. 6, 2014). Insofar as Wey requests documents that are not investigative or deliberative in nature, that material is likely already in the possession of the Issuers—either because the documents in question originated from the Issuers or were sent to them by Nasdaq. As alleged in the indictment, Wey evidently controls the Issuers; in any event, he can pursue any documents needed from them.

In addition, two of the three Issuers named in Wey's subpoena appealed to the SEC from Nasdaq's decision to de-list them, and in the course of those proceedings Nasdaq submitted records related to the 300 round-lot shareholder requirement to the SEC. Many of those records are presumably available to Wey from the SEC.

11

Unless Wey can show that Nasdaq retains relevant, unprivileged material not otherwise accessible to him, his subpoena of Nasdaq is unnecessary.

\* \* \*

Nasdaq recognizes that this is a criminal case, and that criminal defendants have a constitutional right to defend themselves. But Rule 17(c) recognizes countervailing interests, and accordingly does not authorize defendants to subpoena third parties for evidence that is protected by privilege, irrelevant, inadmissible, or otherwise reasonably procurable. *See Nixon*, 418 U.S. at 699–700. Even criminal defendants are not entitled to see the emails exchanged by third-party regulatory agencies investigating their cases, and for good reason. Based on Nasdaq's absolute immunity as an SRO, the accompanying evidentiary privileges that Nasdaq enjoys, and the limitations of Rule 17(c), this Court should quash Wey's subpoena under Rule 17(c)(2).

## CONCLUSION

Nasdaq's motion to quash the subpoena should be granted.

Dated: February 1, 2017                            Respectfully submitted.

/s/ Michael R. Huston
Michael R. Huston
Douglas R. Cox
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 887-3793
Facsimile: (202) 530-9604
mhuston@gibsondunn.com

*Counsel for Nonparty Nasdaq, Inc.*